Nolan Wayne WEEKS, Jr., Appellant,

v.

UNITED STATES of America, Appellee.

No. 7071.

United States Court of Appeals Tenth Circuit.

Jan. 9, 1963.

Galen J. Ross, Salt Lake City, Utah (Mitsunaga & Ross, Salt Lake City, Utah, on the brief), for appellant.

Gerald R. Miller, Asst. U. S. Atty. (William T. Thurman, U. S. Atty., and Craig T. Vincent, Asst. U. S. Atty., on the brief), for appellee.

Before MURRAH, Chief Judge, and LEWIS and SETH, Circuit Judges.

SETH, Circuit Judge.

The appellant was indicted in three counts for the interstate transportation of forged securities. He was tried by a jury in the district of Utah and found guilty on all counts. Each count related to a particular check alleged to have been falsely made and forged, and transported from Salt Lake City to Texas and to Idaho.

In his appeal the appellant urges that the trial court committed error in admitting testimony and exhibits which related to transactions of a criminal nature in the state of Colorado and which were entirely separate from those set out in the indictment.

The Colorado incidents took place before, but within about a month of those in Utah which were the basis for the indictment. This evidence concerned a Denver bank account which was maintained by the appellant in the name of Check Identification System, and the testimony complained of was by an official of this bank. This witness testified that his bank received for deposit in this account a number of checks which he described and which bore names of various makers and were drawn on banks in other states but payable to the Check Identification System. He also testified that all of these checks were returned unpaid marked "no account" or bearing some similar notation. He testified that the appellant had drawn checks on this Denver bank account, that the bank had paid these checks, and as a result of these transactions, there was a large overdraft in the account and the bank was unable to locate the appellant after this occurred. The exhibits which were introduced relating to the Denver transactions were Government's Exhibits 19, 20, 21, 22 and 23. Exhibit 19 consisted of a group of checks drawn on the Check

Identification System account and constituting the withdrawals above mentioned. Exhibit 20 was a group of five checks deposited with the Denver bank and which were returned by the banks on which they were drawn as above described. Exhibit 21 was a business calling card bearing the name of Check Identification System, N. W. Weeks, which had been presented to the Denver bank. Exhibits 22 and 23 were signature cards on the Check Identification System bank account. As indicated above the appellant complains that the introduction of the above exhibits and the testimony of the bank official constituted error.

The appellant objected to the testimony of the Denver bank official on the ground that this evidence was not material and asked that the evidence be stricken. The court denied the motion and admitted the evidence, stating: .

> "This evidence is received for such light, if any, as it may throw upon the state of mind or intent of the defendant with respect to the subject matter of the three charges before the Court. Whether indeed it will throw any light upon that matter is something that you will have to decide upon the whole record when the record is complete; but I wanted to emphasize at this time that it is received for no other purpose than to throw light upon the state of mind and intent of the defendant, if any light indeed it does ever throw, but with respect to the three charges before us here."

Government's Exhibit 19, which was the several checks drawn on the Denver bank, and Exhibit 20, which was the five checks deposited to the Denver bank account and returned, were offered "subject to the Court's caution to the jury a few minutes ago with respect to the testimony adduced from this witness." The appellant objected on the grounds that the exhibits had not been properly identified and no "due execution" had been shown. The objection was overruled . and the exhibits were admitted.

Exhibit 21 which was the business calling card was offered and the appellant stated he had no objections.

Exhibits 22 and 23, which were the signature cards, when offered were objected to on the grounds of "invalid execution." The objection was overruled and the exhibits were admitted.

At the close of the Government's case, the appellant moved that all the *checks* be stricken on the ground that there was no proof of due execution. This motion did not mention any exhibits except the checks which were Exhibits 19 and 20.

The appellant testified, and his attorney asked him whether or not he had deposited money in the Denver bank account and he stated that he had. His attorney then showed him the Government's Exhibit 20 and asked him whether or not he could identify the checks which constituted the exhibit. The witness stated, "Yes, these are the checks in question, mailed to me by Mr. Warren." He was asked whether these were the checks which he had put in the bank and he replied that they were, stating that he would endorse them or that they would be endorsed at the office. The appellant was next shown by his attorney Government's Exhibit 19 and asked whether he could identify the checks in this exhibit. He stated he could and that they were the checks made out by the firm or by him to pay various bills. On cross-examination the appellant was shown the Government's Exhibit 21 and was asked whether it was the business card he had presented to the Denver bank and the appellant replied that it was. Also on cross-examination he was shown Government's Exhibits 22 and 23, and asked whether the signatures appearing on these signature cards were his, and he stated that they were.

As indicated above, the record shows that the appellant while on the stand identified and stated he had signed Exhibits 22 and 23 and that he had delivered Exhibit 21 to the Denver bank. He further stated that the checks constituting Exhibit 19 were made by him,

and he further admitted that the checks constituting Exhibit 20 had been deposited by him or by his firm. This being the case, there is little left of the appellant's objection that they were not identified and no due execution was shown nor to his motion that all checks be stricken because there was no showing of "due execution." Further the delivery of Exhibit 21 and the execution of Exhibits 22 and 23 were also admitted by appellant, and consequently there is little left of the objection that no valid execution of these exhibits was shown. As mentioned, appellant had objected to the bank officer's testimony as not material, but there is also little left of this objection since appellant testified as part of his own case to the checks which constituted the transactions referred to in the bank officer's testimony.

■ As indicated above, the trial court permitted the witness to be examined as to the Denver transactions on the ground that it would show or be material to the intent or state of mind of the appellant. As we understand the theory of the Government, it was that the transactions in Denver could be shown for the purpose indicated by the court and to show a general plan or scheme of the appellant. The three counts of the indictment related to transactions and to checks which were drawn on banks other than the Denver bank and which were alleged to have been transported in interstate commerce with unlawful and fraudulent intent from Salt Lake City to states other than Colorado. Thus the Denver transactions were distinct and separate from those described in the indictment. It was incumbent upon the Government to prove that the incidents described in the indictment were accomplished by appellant with an unlawful and fraudulent intent. Evidence to show such intent was material; consequently, the question here is whether or not the evidence as to the Denver bank account showed appellant's intent or state of mind as to the Utah incidents.

The evidence shows that the appellant's banking activities in Denver and in Salt Lake City were similar if not identical, and that both took place at about the same time. The Denver action, being similar and so timed, shows that the incidents for which appellant was convicted were not isolated ones. This evidence also tends to show that the Salt Lake City checks were not matters of chance or accident. Wigmore, Evidence, 3d Ed., § 302. There was a fact comparison developed by the evidence complained of.

This court in a variety of fact situations has had the occasion to consider the admissibility of evidence which shows or tends to show the commission of a crime other than the one charged. O'Dell v. United States, 251 F.2d 704 (10th Cir.), was a case involving the transportation of a stolen car. The evidence complained of related to a credit card in appellant's possession at the time of his arrest. The card was admitted and the arresting officer testified as to statements made by appellant regarding the card. This testimony was to the effect that appellant used the card, that his name was Wattel, his address was as shown on the card, and that he charged purchases on the card. Appellant argued that this evidence tended to show that he had committed a crime other than that for which he was being tried and was therefore inadmissible. The court said of this objection:

"Relevant evidence which tends to prove a material fact in the case on trial is admissible even though it incidentally shows that the accused committed another offense at a different time and place. The test in measuring the admissibility of evidence is whether it is material to any issue in the case on trial. If so, it should be admitted even though it tends to establish the commission of another crime. Suhay v. United States, 10 Cir., 95 F.2d 890, certiorari denied 304 U.S. 580, 58 S.Ct. 1060, 82 L.Ed. 1543; Troutman v.

United States, 10 Cir., 100 F.2d 628; Crapo v. United States, 10 Cir., 100 F.2d 996; Legatos v. United States, 9 Cir., 222 F.2d 678. The evidence tended to establish the fact that appellant did not own the automobile; tended to establish the fact that he transported it from Los Angeles to a point near Salida, as charged in the information; and tended to throw light upon the intent and motive of such transportation. It therefore was not open to the objection that it was inadmissible because it tended to prove the commission of another crime. Morlan v. United States, 10 Cir., 230 F.2d 30."

See also Fitts v. United States, 284 F.2d 108 (10th Cir.); Coulston v. United States, 51 F.2d 178 (10th Cir.).

Morlan v. United States, 230 F.2d 30 (10th Cir.), arose from a prosecution for transporting women for prostitution. On appeal the introduction of evidence as to events taking place after the alleged transportation was objected to. These incidents included one where appellant on the return trip with one of the women took a wheel from a car which did not belong to him and was jailed, also one where appellant threatened one of the women with a gun on their return when she told him she was going to quit working as a prostitute. But as to these the court said:

"And where intent is an essential element of the offense charged, evidence throwing light upon that element is admissible even though it tends to prove the commission of another crime at a different time and place not too remote in time. Suhay v. United States, 10 Cir., 95 F.2d 890; certiorari denied, 304 U.S. 580, 58 S.Ct. 1060, 82 L.Ed. 1543; Baish v. United States, 10 Cir., 90 F.2d 988. The evidence was admissible as throwing light upon the question of the intent and purpose with which appellant transported the women from Salt Lake City to Las Vegas."

See also Gardner v. United States, 283 F.2d 580 (10th Cir.).

Likewise in Ruhl v. United States, 148 F.2d 173 (10th Cir.), this court considered an appeal from a first degree murder conviction with the death penalty. Among the errors urged was the admission of certain evidence and the testimony of a sheriff. This evidence was to the effect that certain empty shells and loaded shells suitable for appellant's gun and also some pieces of string similar to that found in appellant's possession on arrest and similar to that used to bind the companion of the person murdered were found on the Cota ranch. The reason why this is urged as error is that Mr. and Mrs. Cota were found murdered some distance south of the place of the murder in question; that the Cotas were well known and well regarded, and their murder had received much publicity. Of this objection the court said:

"There was expert evidence that the exploded shells found at the Cota ranch were fired from Ruhl's gun. This evidence was admissible to prove flight, the course of flight, and tended to corroborate Ruhl's confession. No mention or reference was made by the Sheriff to the Cota murders. The only reference was to the Cota ranch where these things were found. This evidence was admissible even if we assume that the jury knew of the Cota murders and even if it is assumed that it tended to raise a suspicion in the minds of the jury that Ruhl might have been guilty of another crime, because it was competent in the case in which Ruhl was being tried.

"In view of the severity of the penalty, we have given careful consideration to every contention that is made, and have meticulously scrutinized the entire record. We find no reversible error therein."

This court in Troutman v. United States, 100 F.2d 628 (10th Cir.), of this matter said:

"Neither did the fact that the evidence may have tended to establish the crime of embezzlement or that of defrauding the Metropolitan Trust Company warrant its exclusion where it was relevant to an issue in the case. An accused cannot be convicted upon evidence that he committed another crime, and ordinarily evidence of a crime wholly separate and independent and with no relation to the one charged in the indictment is not admissible, but relevant evidence which tends to prove a material fact in the case on trial should be admitted even though it tends to show that the accused committed another offense at a different time and place. Suhay v. United States, 10 Cir., 95 F.2d 890, certiorari denied 304 U.S. 580, 58 S.Ct. 1060, 82 L.Ed. 1543."

The cited case concerned an appeal from a conviction for using the mails to defraud, for a violation of the Securities Act, and for conspiracy. The reference in the above quotation is to a trust company with which were to be deposited the proceeds from the sale of the securities in question.

One of the more frequently cited cases is Suhay v. United States, 95 F.2d 890 (10th Cir.), cert. denied 304 U.S. 580, which was an appeal from a conviction of murder in the first degree. The defendant and a companion were on parole from a sentence for armed robbery, and robbed a person of a car and then held up a bank. The officer who attempted to arrest the two was killed, and the trial was for this crime. The trial court permitted evidence to be introduced concerning the commission by appellant of the several crimes which preceded the murder. The appellant urged that this evidence was of separate crimes and that it was prejudicial. The court on appeal held that this evidence tended to show that the defendants killed the officer to avoid arrest and with premeditation. The trial court, when the evidence was admitted and as part of the instructions at the end of the trial, instructed the jury that it was to be considered only as bearing on the question of motive. This court of this issue said:

"It is fundamental that an accused cannot be convicted upon proof that he committed another offense; and it is axiomatic that ordinarily evidence of a crime wholly separate, independent, and without any relation to the one laid in the indictment is not admissible. But relevant evidence which tends to prove a material fact should not be excluded merely because it shows or tends to show that the accused committed another offense at a different time and place. The test in measuring the admissibility of evidence is whether it is material to any issue in the case on trial. If so, it should not be rejected even though it establishes the commission of another crime. The evidence relating to the offenses committed in New York was material upon the question of motive for the homicide."

See also Crapo v. United States, 100 F.2d 996 (10th Cir.).

The Eighth Circuit in DeVoe v. United States, 103 F.2d 584, reached the same conclusion as in the cases cited above in a conviction of election officials for false count and false certificates. There the evidence in question was correspondence between the two defendants which showed participation in padding the registration lists and other matters "which did not directly bear upon the false count and false certification of the ballots." The appellate court in affirming said the trial court felt the evidence was admissible to show intent. It was enough that the evidence in question "throws light" upon the particular transaction for which the defendants were being tried.

██ Under the decisions quoted and cited above, the action of the trial court in admitting the exhibits and in permitting the witness to testify concerning the Denver bank transaction was entirely proper. It was relevant and tended to

prove a material fact. The evidence was relevant to the matter of appellant's intent in the commission of the acts for which he was being tried. Also the conduct of activities in Denver similar to those in Salt Lake City at about the same time tended to show that the Salt Lake City incidents were done with a deliberate purpose and were not accidental or a matter of chance. The trial judge cautioned the jury that the evidence was received for the limited purpose. As indicated in Wigmore, supra, intent may be shown by proof of similar instances, and the decisions discussed above set out the limitations and circumstances where this may be done when the facts sought to be shown relate to criminal acts of the defendant.

■ Appellant also urges that the evidence of the Denver transactions constitutes error on other grounds. He urges that the checks (Government Exhibits 19 and 20) and the business calling card (No. 21) were hearsay. This objection was not made at the trial and cannot be urged here. The record shows that the trial judge asked appellant's attorney whether he objected on the ground of hearsay and he stated he did not.

■ Appellant also objects that the signature cards (Nos. 22 and 23) were inadmissible because the Government did not prove that appellant signed them. However, as above mentioned, appellant when on the stand under cross-examination admitted they bore his signature.

■■ Appellant also urges that his right to be confronted by witnesses against him was denied by the admission of the exhibits above referred to. Here again we point out that no such objection and no hearsay objections were made during the trial. The documentary evidence admitted was properly identified by witnesses and by the appellant himself. There is not a violation of the right of confrontation by the admission of documents otherwise admissible. Appellant with full knowledge of the situation made no objection at the trial and this constituted waiver. Johnson v.

United States, 318 U.S. 189, 63 S.Ct. 549, 87 L.Ed. 704, concerned the waiver of the right not to testify, but is applicable on waiver generally.

We find no error.

Affirmed.