Keith Orange CRAM, Appellant,

v.

UNITED STATES of America, Appellee.

No. 7271.

United States Court of Appeals Tenth Circuit.

April 29, 1963.

L. Thomas Woodford, of Quiat & Woodford, Denver, Colorado, for appellant.

L. D. Harris, Asst. U. S. Atty., Albuquerque, N. M. (John Quinn, U. S. Atty., Albuquerque, N. M., and Ruth C. Streeter, Asst. U. S. Atty., Albuquerque, N. M., with him on the brief), for appellee.

Before PICKETT and SETH, Circuit Judges, and CHRISTENSEN, United States District Judge.

PICKETT, Circuit Judge.

The indictment in this case charged that Cram, in violation of 18 U.S.C. § 2312, transported an automobile from Glendale, California to Tucumcari, New Mexico knowing the same to have been stolen. He appeals from a four year sentence imposed after conviction.

██ The sufficiency of the evidence to sustain the conviction is not questioned here, but it is urged that the court erred in admitting into evidence Cram's written statement which he contends was given to an agent of the F.B.I. while he was illegally held in custody by the New Mexico police, and prior to his arraignment before a committing magistrate. It is also contended that prejudicial error occurred in the admission of evidence of criminal acts by Cram other than those charged in the indictment.

On December 4, 1961, Cram obtained an automobile from a used car dealer in Glendale, California, representing himself to be a prospective purchaser. After obtaining possession of the automobile, Cram immediately left California and proceeded through the States of Nevada, Arizona, and New Mexico to a point near the town of Tucumcari, where he left the vehicle on a main highway after running out of gasoline. A New Mexico highway patrolman discovered the automobile and directed that it be towed into Tucumcari. When Cram appeared later to claim it he was asked by the state officer to give his name and to produce his title papers. He gave a fictitious name, and told the officers that his title papers had been lost. Thereupon he was taken to the office of the state police, and the F.B.I. was notified. An agent appeared shortly thereafter, and an attorney who represented Cram gave the agent permission to question Cram as to his ownership of the automobile. Immediately thereafter Cram was taken by the state officers before a Justice of the Peace on a charge of violating Section 64–3–11, New Mexico Stat.1953.[1] The following day, which was Saturday, the F.B.I. agent, in response to his telegraphic inquiry, received information from California authorities that the car in question had been stolen. Cram was again questioned about his ownership, and gave his version of how he acquired possession of it, stating that a car salesman suggested that he try out the automobile by driving it; that while driving about Los Angeles, he decided to go to Las Vegas, Nevada, where he lost all his money gambling; that he then proceeded on through Arizona to New Mexico, where he was arrested. Cram did not admit that he had stolen the car or that

---

1. Section 64–3–11, New Mexico Stat.1953 provides:

   "Every owner upon receipt of registration evidence shall write his signature thereon in a space provided. Every such registration evidence or duplicates thereof certified by the division shall be exhibited upon demand of any police officer."

he intended either to steal it or permanently deprive the owner of it without payment. It was then decided that federal charges should be filed against Cram for the interstate transportation of a stolen motor vehicle. No United States Commissioner was available until Monday, and Cram remained in the custody of the state officers until he was taken before the United States Commissioner on Monday. The written statement offered in evidence was prepared after the appearance before the Commissioner, but the information contained therein was the same as that given by the accused prior to his arraignment.

It is urged that the statement made to the F.B.I. agent should have been excluded under the rule of Anderson v. United States, 318 U.S. 350, 63 S.Ct. 599, 87 L.Ed. 829, but we think not. The statement is not a confession of guilt, or an admission that the automobile was transported interstate with knowledge that it was stolen. It is simply an exculpatory statement incorporating Cram's version of how he came into possession of the car. Even though Cram did admit interstate transportation, the entire effect of his statement is that he was using it with the permission of the owner, and had no intent to steal it. If his statement was true, he had committed no crime, and he reaffirmed the statement when presenting his defense at the trial of the case.[2] The strict rules governing the admissibility of confessions are not applicable

to statements such as this. Ercoli v. United States, 76 U.S.App.D.C. 360, 131 F.2d 354; Rand v. United States, 3 Cir., 45 F.2d 947; Dimmick v. United States, 9 Cir., 116 F. 825, cert. denied 189 U.S. 509, 23 S.Ct. 850, 47 L.Ed. 923; III Wigmore, Evidence § 821 (3rd ed. 1940); 22A C.J.S. Criminal Law, § 730 (1961). See Opper v. United States, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101; Morton v. United States, 79 U.S.App.D.C. 329, 147 F.2d 28, cert. denied 324 U.S. 875, 65 S.Ct. 1015, 89 L.Ed. 1428.

Even if Cram's statement were a confession it would not be governed by the rule announced in Anderson v. United States, supra. There the defendants were held by state officers under a working arrangement between the federal and state officers which permitted the federal officers to subject the defendants to lengthy daily interrogations, and they were not taken before a United States Commissioner until after they had confessed. No state charges were ever filed. The Supreme Court concluded that the confessions were inadmissible in evidence under the rule of McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819. Although it was noted in the Anderson case that the defendants were held in violation of a state statute which provided that no person could be committed to prison in Tennessee for any criminal matter until examination thereof be first had before some magistrate, that was not a controlling factor in the case. There is no evidence

2. In regard to the statement, the defendant testified on cross-examination:

"Q. Mr. Cram, you are familiar with this written statement, aren't you?

"A. I am familiar with all of it, not only the part that is crossed out but everything in it, yes, sir.

"Q. Is it true?

"A. It is true, yes. As such, I believe there is no incriminating evidence at all.

"Q. You say it is not incriminating but it is true. Is that right?

"A. Yes.

"Q. It is your testimony first that Mr. Rucker gave you permission to try out the car?

"A. Yes.

"Q. And he didn't tell you not to go to Tucumcari or to Oklahoma City?

"A. He didn't tell me not to go.

"Q. He didn't tell you where not to go. He just gave you permission to drive it out?

"A. Yes.

"Q. You intended to drive it around a while and then take the car back?

"A. Yes.

"Q. You didn't intend to burn up the motor or run the wheels off of it?

"A. I didn't burn up the motor or burn the wheels off of it.

"Q. You intended to buy it when you got back?

"A. I intended to buy it."

here of any collaboration or working agreement between the state and federal authorities relating to the arrest and the detention of Cram, and such an arrangement must be shown in order to invoke the rule of the Anderson case.

The circumstances here are quite similar to those in United States v. Coppola, 2 Cir., 281 F.2d 340, aff'd 365 U.S. 762, 81 S.Ct. 884, 6 L.Ed.2d 79, where incriminating admissions, obtained by F.B.I. agents while the defendant was under arrest on a state charge, were held to be admissible in evidence. Coppola's contention was that the admissions were improperly received in evidence because they were "made during an illegal detention by the Buffalo police acting under a 'working agreement' with the F.B.I. * * * *", and should have been excluded under the Anderson rule.[3] In affirming, the Supreme Court concluded that, under the particular facts, the case was not controlled by Anderson. In the instant case Cram was charged with a violation of a state statute, and immediately taken before a state Justice of the Peace. The federal officers were advised of the arrest, and they then made an investigation to determine if a federal crime had been committed. Cf. Sullivan v. United States, 10 Cir., 315 F.2d 304; Swift v. United States, 10 Cir., 314 F. 2d 860. Neither the fact that Cram had not committed a state offense nor the fact that he was not subject to arrest under New Mexico statutes would result in his voluntary confession being excluded under the rule of Anderson v. United States, supra.

■ On cross-examination Cram was questioned by the District Attorney about his criminal record. During the course of this examination he was asked if a short time before he had not ob-

tained possession of an automobile of the same make, from a dealer in Oregon, in a manner almost identical to that used in obtaining possession of the car in Glendale, California, and then driven that car from Oregon to California. He was also asked if he had not cashed a forged check after he left California and prior to his arrival in Tucumcari. Cram was not convicted of any offense in either of these instances. Objections to these questions were overruled, and Cram asserts those rulings as error. The United States urges that the questioning about the car was proper cross-examination to show a course of conduct on the issue of intent, and further that the cross-examination as to the forged check was admissible because it contradicted Cram's direct testimony relating to the money in his possession and his intention to purchase the automobile. The court instructed the jury that evidence of former convictions could be considered by the jury only as that might affect the credibility of the witness. No limiting instruction was given with respect to the testimony relating to the check forgery or the acquisition of the automobile in Oregon, but Cram did not request such an instruction, and he does not assert any error arising out of the failure to give it.

■ While it is true that an accused cannot be convicted upon evidence that he committed another crime, and therefore evidence of crimes wholly independent of the one for which the defendant is being tried is ordinarily inadmissible, relevant evidence is admissible to prove a material fact even though it may tend to show that the accused committed another offense at another time and place. Weeks v. United States, 10 Cir., 313 F.2d 688; Tandberg-Hanssen v. United States, 10 Cir., 284 F.2d 331; Fitts v.

---

3. In the case of United States v. Coppola, 2 Cir., 281 F.2d 340, aff'd 365 U.S. 762, 81 S.Ct. 884, 6 L.Ed.2d 79, there was considerable cooperation between the state and federal officers before the arrest. Agents of the F.B.I. furnished information to the state police that Coppola had committed a state offense, and told

them where he could be located. The state officers were also advised that Coppola was being investigated in connection with a bank holdup which was a federal offense. Immediately after the arrest, and before any charges were filed, the F.B.I. agents questioned him.

United States, 10 Cir., 284 F.2d 108; Gardner v. United States, 10 Cir., 283 F.2d 580; Jones v. United States, 10 Cir., 251 F.2d 288, cert. denied 356 U.S. 919, 78 S.Ct. 703, 2 L.Ed.2d 715; O'Dell v. United States, 10 Cir., 251 F.2d 704. The questions objected to did not elicit relevant evidence which tended to prove the crime charged, and the admissibility of this evidence even on cross-examination for purposes of impeachment is doubtful. In view of the overwhelming evidence of guilt, however, we are convinced, from the record as a whole, that this testimony did not have any appreciable effect upon the verdict of the jury, and no substantial rights of the defendant were affected. Fed.R.Crim.P. 52 (a); Kotteakos v. United States, 328 U. S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557; Sawyer v. United States, 112 U.S.App. D.C. 381, 303 F.2d 392, cert. denied 371 U.S. 879, 83 S.Ct. 150, 9 L.Ed.2d 116. Cf. Brooks v. United States, 10 Cir., 309 F.2d 580.

Affirmed.