Louis Samuel **COTTON**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 9966.

United States Court of Appeals Tenth Circuit.

April 16, 1969.

Roland E. Camfield, Jr., Denver, Colo., for appellant.

Thomas E. Joyce, Kansas City, Kan. (Benjamin E. Franklin, U. S. Atty., John R. Martin, Asst. U. S. Atty., Topeka, Kan., on the brief), for appellee.

Before MURRAH, Chief Judge, SETH, Circuit Judge, and CHRISTEN-SEN, District Judge.

MURRAH, Chief Judge.

This is an appeal from conviction by a jury on four counts of stealing from the addressees' mail boxes and knowingly possessing two county welfare checks in violation of §§ 2 and 1708 of Title 18

U.S.C.;[1] on 16 counts of stealing from the addressees' mail boxes, knowingly possessing, forging and uttering four social security checks in violation of 18 U.S.C. §§ 2, 495 and 1708;[2] on one count of conspiring to commit some of these acts and other similar acts in violation of 18 U.S.C. § 371 (Count 21); and on one count of attempting to intimidate a witness in violation of 18 U.S.C. § 1503 (Count 24). Sentence was imposed upon all the counts, some to run concurrently and some consecutively for an aggregate of 26 years.

Appellant Cotton urges that some or all of these convictions be set aside on the following grounds: (1) A prospective juror made prejudicial remarks on voir dire before being excused; (2) that two additional counts of murdering a witness (Count 22) and assaulting a witness (Count 23) contained in the indictment were not dismissed until the jury was impaneled and some testimony taken; (3) that the term "possession", an essential element of several charges, was not adequately defined in the jury instructions; and (4) that the evidence is insufficient to support 16 of the 21 counts on which he was convicted. We shall deal with these points seriatim as they relate to the sentences on the various counts.

■ The sentences on all counts relating to each of the six checks were made to run concurrently. Inasmuch as Appellant does not challenge the possession conviction on the Fisher check (Count 2), the possession, forgery or uttering convictions on the Chatman check (Counts 6, 7 and 8), or the uttering conviction on the Davidson check (Count 16), and the sentences on the other counts relating to each check were made to run concurrently with the unchallenged convictions, we need not review the sufficiency of the evidence to support the other related concurrent sentences. (Counts 1, 5, 13, 14, and 15). See Galbraith v. United States, 387 F.2d 617 (10th Cir. 1968) and United States v. Romano, 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965).

■ On voir dire it was disclosed that prospective juror Campbell was employed by one of the banks through which at least one of the forged checks had been processed. Defense counsel challenged the juror for cause and the trial judge made further inquiry. It then developed that Campbell was familiar with the name Cotton on a check charged back to one of the bank's customers. Campbell further stated, "I know of this particular operation", whereupon he was excused. No admonition was requested and none was given the jury regarding these comments. While no evidence at the trial connected any of the checks with the bank employing Mr. Campbell, there was testimony that Cotton had passed the Fisher check at the Kroger Company (the bank's customer mentioned by Campbell). We think this subsequent evidence cured any possible error made, especially when no action was requested by defense counsel and no affirmative showing of prejudice was made. See Butler v. United States, 351 F.2d 14, 19 (8th Cir. 1965) and cf. United States ex rel. Brown v. Smith, 306 F.2d 596, 603 (2d Cir. 1962).

■ The indictment as read to the jury panel contained two counts of murdering a witness and assaulting a different witness. After the jury had been selected, Cotton moved that these two charges be stricken for lack of federal jurisdiction because no judicial action was pending at the time of the alleged offenses, i. e. see 18 U.S.C. § 1503. The

---

1. Counts 1 and 2 charge theft and possession of the Fisher check and Counts 3 and 4 charge theft and possession of the Harland check.

2. Counts 5 through 20 charge the crimes of theft, possession, forgery and uttering relating to 4 different checks as follows:

Chatman check— Counts 5, 6, 7 and 8
Cook check — Counts 9, 10, 11 and 12
Davidson check— Counts 13, 14, 15 and 16
Jordan check — Counts 17, 18, 19 and 20

trial judge reserved ruling and proceeded with the Government's opening remarks and initial testimony. The opening remarks were limited to a general statement that the Government would prove each count of the indictment [3] and the evidence received did not bear on these issues. The trial judge then struck the counts and, with defense counsel's consent and agreement, admonished the jury to disregard the fact that the stricken charges were contained in the indictment. Cotton now argues that permitting the Government to make its opening remarks and receiving some testimony somehow prejudiced the jury in light of these two charges as originally read to the panel. In support of this thesis, he refers us to Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) for the proposition that the count's admonition in this case was insufficient to remove possible prejudice. Bruton is inapposite to our facts.

Before reading the indictment to the jury panel, the trial judge cautioned the jury that " * * * what I am now referring to is the indictment and * * * the indictment is not evidence against the defendant; it is no more than a charge and you aren't to accept it as any evidence of guilt." And in his instructions to the jury he told them, " * * * an indictment is but a formal method of accusing a defendant of a crime. It is not evidence of any kind against the accused and does not create any presumption or permit any inference of guilt. It is a mere charge of accusation, nothing more and nothing less." We think the admonition considered in context with these remarks about the indictment in general sufficient to preclude any prejudice. Mason v. United States, 408 F.2d 903 (10th Cir. 1969). Cotton's thesis would permit the defendant to have a mistrial after jeopardy had attached, by making his motion after the jury was impaneled.[4] We can find no prejudice in delaying final ruling until after opening remarks and testimony, neither of which related to these charges.

■■ Defense counsel submitted two instructions to the trial judge which were both denied. This denial is not appealed. No definition of the term "possession" was given, and counsel for Cotton made no objection to the instructions as given. Thus, unless the error was palpably wrong, it cannot now be raised, Rule 30, F.R.Cr.P. 18 U.S.C., and we find no error in light of Osborn v. United States, 391 F.2d 115 (10th Cir. 1968) to the effect that where the defense is based on complete lack of possession rather than innocent possession, it was not error to omit a legal definition of "possession".

■ We now turn to the sufficiency of the evidence challenge to various substantive counts and we must remember that in reviewing challenges to the sufficiency of the evidence we construe all evidence, and all reasonable inferences, in favor of the Government. Mason v. United States, supra.

■ In a general way Cotton urges that while the evidence was sufficient to sustain the conspiracy count, the evidentiary deficiencies in the other substantive counts sufficiently biased the jury as to require reversal of the conspiracy conviction. The essence of this unique argument is that the defendant was prejudiced by admittedly relevant, probative evidence which should be excluded because it tended to show his guilt. This contention is utterly without merit for it is settled beyond doubt that relevant, material evidence is not excludable because it tends to prove another crime charged in the same indictment. See United States v. Bridges, 406 F.2d 1051 (10th Cir. 1969); Moran v.

---

3. The Government's opening remarks did not refer to any charge specifically and rather consisted of a commitment to prove each and every charge as read in the indictment.

4. Defense counsel admittedly was aware of the grounds for striking these two charges before they were read to the jury panel.

United States, 404 F.2d 663, 667 (10th Cir. 1968) and cf. Murdock v. United States, 283 F.2d 585 (10th Cir. 1960) and Gardner v. United States, 283 F.2d 580 (10th Cir. 1960). We will proceed with the remaining substantive counts relating to the Harland, Cook and Jordan checks.

■ Counts 3 and 4 charged theft and possession of the Harland check dated October 1, 1966 (the conspiracy period as charged only covered December 31, 1966 to June 1, 1967). The evidence showed that the check, in the ordinary course of business, was mailed to the payee, who never received or endorsed it. Cotton was employed next door to the payee's mailing address for a short period of time coinciding with the date the check should have been delivered. A handwriting expert testified that the forged endorsement was made by the same person whose writing appeared in a Government exhibit stipulated to be Cotton's handwriting. The opportunity for theft, coupled with the inference permitted from the unexplained possession of recently stolen property that the possessor stole the property, is sufficient for the jury to have found both theft and possession. Hall v. United States, 404 F.2d 1367 (10th Cir. 1968); Osborn v. United States, supra, 391 F.2d at p. 117, and Glavin v. United States, 396 F.2d 725 (9th Cir. 1968) cert. den. 393 U.S. 926, 89 S.Ct. 258, 21 L.Ed.2d 262. And see generally United States v. Romano, supra.

■ Counts 9, 10, 11 and 12 charged theft, possession, forgery, and uttering the Cook check dated February 3, 1967. The evidence showed that the check was delivered to the payee's mailbox but not received or endorsed by her. Witness Brockington testified that she endorsed the check at an apartment used by Cotton in processing other stolen checks. Cotton and 3 others, present when Brockington endorsed the check, left with the forged Cook check and several others and returned with the proceeds. Appellant here challenges all these counts. No evidence showed how the check came to the apartment or who, other than Brockington, had possession. The indictment, however, also charged Cotton as an aider and abettor under 18 U.S.C. § 2, on all counts, and the jury was so instructed without objection. In view of this charge and instruction, we think the testimony that Cotton was present with others who had forged and passed stolen checks, that Cotton and 3 others left with the Cook check and returned with the proceeds, is sufficient for the jury to find that Cotton "consciously share[d] in [the] criminal act[s]" of possessing, forging and uttering as a principal. Nye & Nissen v. United States, 336 U.S. 613, 620, 69 S.Ct. 766, 93 L.Ed. 919 (1949) [5] and cf. King v. United States, 402 F.2d 289, 291 (10th Cir. 1968). And the unexplained possession is sufficient to permit the jury to infer, as they must have, that Cotton somehow criminally participated in the theft. Cf. Blunt v. United States, 404 F.2d 1283 (D.C.Cir.1968).

Counts 17, 18, 19 and 20 charge theft, possession, forgery, and uttering of the Jordan check dated February 3, 1967. The evidence showed that the payee had not received or endorsed the check. Witness Brockington testified she forged the endorsement just as she had on the Cook check supra. Again, the evidence did not disclose how the check came to the apartment or who, other than the endorser, had possession. But we think, as with the Cook check, the testimony that Cotton was present, that he and 3 others left with several checks, including the Jordan check, and returned with the pro-

5. While no objections were made to the aider and abettor instructions as given, it may be noteworthy that the charge approved in Pinkerton v. United States, 328 U.S. 640, 645, note 6, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946) and qualified in Nye and Nissen v. United States, supra, was not given in this case. Thus, in no event do we reach the question of criminal liability on a substantive count imputed from the criminal acts of co-conspirators done in furtherance of the conspiracy.

ceeds, is sufficient to convince the jury beyond a reasonable doubt that Cotton had aided and abetted the possession, forgery, and uttering of the Cook check. And as a principal to the unexplained possession, we think the jury could likewise believe he participated in some conscious and wilful way in the theft.

The final attack on the sufficiency of the evidence is made against the charge of threatening the witness, Sharon Smith (Count 24). The only argument of any merit is Cotton's position that at the time the threatening note was, according to the proof, delivered to Smith, no federal proceeding was then pending. Smith testified that a note from Cotton was delivered by Wanda Brown August 20, 1967, and that she testified before the United States Commissioner August 29, 1967. The note told her she might be "messed up" if she came to court. Evidence further disclosed that Cotton was an inmate in the Wyandotte County Jail on the date the note was delivered. This is the only evidence relevant to this issue. On this charge the jury was told:

> "If you find beyond a reasonable doubt that the defendant sent a letter to the witness, Sharon Janice Smith, as charged, then knowing that she was expected to testify as a witness in a pending proceeding before the United States Commissioner, and that such letter was intended by the defendant as a threat to the witness and to influence her not to appear as a witness to testify, you should find the defendant guilty on this count. If you do not so find, you must acquit him."

We think all these elements were supported by sufficient evidence except the crucial, indeed, the jurisdictional showing that there was a proceeding then pending in which Smith intended to testify when threatened. For, to constitute a federal offense, there must have been some federal proceedings then pending. Moreover, for Smith to be a federally protected witness she must be expected to testify at the pending proceedings. See United States v. Bittinger, Fed.Cas. No. 14,598 (D.C.W.D. Mo.1876); Pettibone v. United States, 148 U.S. 197, 13 S.Ct. 542, 37 L.Ed. 419 (1893); Davey v. United States, 208 F. 237 (7th Cir. 1913), and Wilson v. United States, 77 F.2d 236 (8th Cir. 1935). Much was made of whether or not a subpoena had issued. The evidence of such is totally lacking, but in any event, a subpoena is not necessary. Hunt v. United States, 400 F.2d 306 (5th Cir. 1968) cert. den. 393 U.S. 1021, 89 S.Ct. 629, 21 L.Ed.2d 566, and cf. Walker v. United States, 93 F.2d 792, 795 (8th Cir. 1938).

 The evidence showed that Cotton was in a county jail, that the note threatened Smith if she did come to court, and that she did testify before the United States Commissioner 9 days later. The record, however, is fatally deficient concerning whether Cotton was being retained on federal or state charges, whether Smith intended on August 20 to testify on the federal charges, or even whether the federal charges had been filed. Cf. Williams v. United States, 265 F.2d 214 (9th Cir. 1959) construing an almost identical Alaskan territorial statute. We are asked by the Government to hold this evidence sufficient for the jury to find that a proceeding was pending before the United States Commissioner at which Cotton knew Smith was expected to testify. But we think the evidence inadequate to prove beyond a reasonable doubt that a federal proceeding was then pending at which Smith expected to testify.

The conviction and sentence on the intimidation charge (Count 24) is reversed and the remaining convictions are affirmed.