Commonwealth *v.* Melnyczenko, Appellant.

318

Submitted June 10, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*A. Anthony Kilkuskie,* Assistant Public Defender, for appellant.

*Grant E. Wesner,* Deputy District Attorney, and *Robert L. VanHoove,* District Attorney, for Commonwealth, appellee.

OPINION BY SPAETH, J., April 22, 1975:

At 9:00 p.m. on December 9, 1971, Ethel Shingle returned from a visit to her husband in the hospital to discover that their home had been burglarized and ransacked. Among the items taken were a shotgun, a rifle, a pistol, two watches, and a ring. The police were summoned, and they took some items from the premises to check for fingerprints.

At 1:38 a.m. on February 19, 1972, Patrolman Speth of the Spring Township police went to the Peiffer Grocery Store in West Wyomissing in response to a radio call that a burglary was in progress. At the store he met the owner and Chief Schlegel. While the patrolman consulted with the owner inside the store, Chief Schlegel saw footprints in the freshly fallen snow, and began to follow them from the back door of the store. In the meantime, the patrolman went out of the front door of the store, and saw appellant walk down the street and begin to get into a car. He asked appellant for some identification. During this exchange Schlegel appeared, still following the footprints in the snow, and discovered they led to where appellant was standing. Appellant was then placed under arrest for the burglary of the store. A subsequent search of appellant at the police station revealed, among other things, a wristwatch bearing the inscription "Albert C. Shingle, 25 years with the Delp Company." This was one of the items stolen in the December

9, 1971, burglary of the Shingle home. Appellant's fingerprints were taken and comparison revealed that two of the fingerprints found at the Shingle home were his.

On March 19 and 20, 1973, appellant was tried before Judge HESS and a jury for the burglary of the Shingle home and was found guilty of burglary and larceny (and innocent of receiving stolen goods). Post-trial motions followed and were denied, and on August 28, 1973, sentence was imposed. This appeal is from that sentence.

The burglary of the grocery store is relevant to this case only as it pertains to the circumstances surrounding the arrest of appellant and the subsequent discovery of the wristwatch. Appellant claims that Patrolman Speth had no right to stop him for identification, and that therefore the evidence later seized should have been suppressed. We disagree. Appellant was not searched when the patrolman stopped him. Whether or not the patrolman had probable cause to arrest appellant, he was justified under the circumstances in stopping him to determine identity: appellant was near the scene of the burglary that had just been committed; it was an early hour of the morning; and appellant was the only person on the street. In *Terry v. Ohio*, 392 U.S. 1 (1968), the seminal decision on police stops, the Supreme Court recognized that such a limited investigatory stop is not unconstitutional, and that indeed it is a legitimate police function. "One general [governmental] interest is of course that of effective crime prevention and detection; it is this interest which underlies the recognition that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *Id.* at 22. We need not decide whether any further investigation, such as a search or frisk of appellant, would have been justified under *Terry,* because none was made, since within minutes after the stop Chief Schlegel finished tracking down

appellant and placed him under arrest. This arrest was clearly based upon probable cause, and appellant does not claim otherwise; he only challenges the stop by Patrolman Speth. Since that stop was proper, it did not vitiate the arrest. There is thus no reason to suppress the evidence obtained as a result of the arrest.

Appellant makes two more arguments, which can best be resolved by reference to the following portion of Judge HESS's charge:

"The law is that the unexplained possession of recently stolen articles, personal property, may support an inference which along with other evidence may be sufficient to support a verdict of guilty. So, it becomes necessary for you to understand that evidence.

"Now, support a verdict of guilty of what. Well, the law says it may be unexplained but along with other evidence to support a verdict of guilty of burglary and larceny and, of course, accompanying burglary, the receiving stolen goods. The defendant admits that when he was arrested he had the watch in his possession but he submitted an explanation that he received it a day or two before from a man by the name of Sutton in this antique shop when the defendant offered to repair a pin on the watch that held the wristband. And, Mr. Pasko also testified that in February 1972 he worked for his brother in the antique shop at 613 Lancaster Avenue and said he knows the defendant for a year or so and that he first saw the watch, Exhibit No. 1, when he bought it in a barroom. He named two and he said he didn't know which one or where it was, said he had been drinking and doesn't remember where he bought it but he bought it from two guys and he doesn't know them, said the next day he sold it to a man who lives upstairs from the antique shop, a Mr. Sutton, for fifteen dollars and that he saw the defendant with it when Sutton gave it to the defendant to have it

fixed. Now, Sutton was not here, did not testify and it was stated that he had been available and subpoenaed in December of 1972 when the case was listed for trial before he was here before and was not subpoenaed this time. The defendant said he attempted to locate him. Now, if a witness is not here and has not testified, the law merely states that you cannot infer that the testimony would have been favorable to the party who wanted to or intended to call him. We can't speculate what the witness might have said. In fairness, we can't say it would be unfavorable. It is a nullity. It is not here. We cannot speculate what the witness may have said if he was here because in point of fact, he wasn't here. However, Mr. Pasko and the defendant did testify and if you accept their explanation, if you accept their testimony, then it would certainly appear to explain how the defendant was in possession of the watch at the time he was arrested. So, that is important that you consider the credibility of that testimony and come to a conclusion. If you accept that testimony and are satisfied that that explanation is credible, then I charge you that the possession of the watch drops out of the case insofar as consideration of guilt of the defendant may be concerned."

Appellant's first argument is that the reference to an allowable inference from possession of stolen goods that the possessor is the thief is "not applicable to this case," and that it was therefore error to include it in the charge. Appellant relies chiefly on *Commonwealth v. Owens*, 441 Pa. 318, 271 A.2d 230 (1970), and *Commonwealth v. Shaffer*, 447 Pa. 91, 288 A.2d 727 (1972), *cert. denied*, 409 U.S. 867 (1972).

Recently we had occasion to analyze *Owens, Shaffer,* and the other decisions dealing with the use of this inference with respect to theft crimes and concluded as follows:

"Clearly, evidence of possession of stolen property may be relevant in deciding whether the possessor is the one who stole it. However, as in a case of receiving stolen property, it is only one piece of evidence, and evidence of possession alone is not sufficient to prove burglary or larceny beyond a reasonable doubt. Therefore, a conviction of either of these crimes based on an inference from possession alone cannot stand. *Commonwealth v. Turner*, 456 Pa. 116, 317 A.2d 298 (1974) (larceny conviction reversed); *Commonwealth v. McFarland*, 452 Pa. 435, 308 A.2d 592 (1973) (convictions of burglary and larceny reversed; conviction of receiving stolen goods affirmed). *See also Commonwealth v. Swiatkowski*, 446 Pa. 126, 285 A.2d 490 (1971); *Commonwealth v. Weaver*, 219 Pa. Superior Ct. 274, 280 A.2d 585 (1971). All of the evidence of surrounding circumstances must be considered in arriving at a finding that the possessor is the thief, and the conviction may be based on circumstantial evidence alone, provided the evidence meets the standard of proof beyond a reasonable doubt. *Commonwealth v. Shaffer, supra. See* cases cited *ante* at 553. *But cf. Commonwealth v. Turner, supra* (dissenting opinion by ROBERTS, J.); *Commonwealth v. Shaffer, supra* (dissenting opinion by POMEROY, J.). Thus a conviction for larceny will be reversed despite the admitted presence of sufficient circumstantial evidence to convict where the trial judge has instructed the jury that it could infer guilt from possession of recently stolen goods alone. *Commonwealth v. Turner, supra.*" *Commonwealth v. Simmons*, 233 Pa. Superior Ct. 547, 558-559, 336 A.2d 624, 630-631 (1975).

Judge HESS's charge stated that "unexplained possession . . . *may* support an inference *which along with other evidence* may be sufficient to support a verdict of guilty." Since the fact that appellant was in possession

of an engraved wristwatch within ten weeks after its theft was relevant "other evidence," a charge on the inference was proper; and when that fact is considered "along with [the] other evidence," *i.e.*, the presence of appellant's fingerprints in the Shingle house, and the Shingles' testimony that appellant had never been in their home as a guest, it was sufficient to support the convictions for burglary and larceny. The jury was instructed to consider the evidence as a whole, not to rely on an inference from possession alone. *Compare Commonwealth v. Kosiorek*, 219 Pa. Superior Ct. 379, 380, 281 A.2d 731, 732 (1971). The charge was thus applicable to the facts of the case and proper under the law.

Appellant's next, and final, argument is that the prosecuting attorney during his closing argument made an improper reference to a defense witness's failure to appear. When objection was made, Judge Hess commented, ". . . they [the jury] cannot infer that his testimony would *not* be favorable to the defendant." Moments later, he added, "No jury may infer—if a witness is referred to and may have been a witness to the transaction, they may *not* infer that the testimony of the witness would have been *favorable*." Again, in the charge, quoted above, he stated, "Now, if a witness is not here and has not testified, the law merely states that you cannot infer from that the testimony would have been favorable to the party who wanted to or intended to call him. We can't speculate what the witness might have said. In fairness, *we can't say it would be unfavorable*." Thus the judge was scrupulous in making it plain that the jury should not draw any negative inference from the failure of the defense witness to appear, and any potentially prejudicial remark the prosecuting attorney might have made[1] was adequately cured by the judge's instructions.

---

1. The remark was never placed on the record, as it should have been when the motion for a mistrial was made.

Judgment of sentence affirmed.

Van der Voort, J., concurs in the result.

―――――

CONCURRING OPINION BY JACOBS, J.:

I fully agree with the majority's resolution of this case, but I cannot acquiesce in its decision to review a "potentially prejudicial remark the prosecuting attorney might have made."

When an objectionable remark is made but not recorded, counsel has an obligation to preserve the remark in order to permit effective appellate review. He may preserve the objectionable statement by entering on the record a stipulation which contains the remark, by requesting the court to place its understanding of the remark on the record, or, if not satisfied that either procedure has accurately preserved the objectionable statement, by placing his own understanding of the remark in the record by way of affidavit. *See Commonwealth v. King*, 227 Pa. Superior Ct. 168, 323 A.2d 260 (1974).

Where counsel does not act to properly preserve the record, I would hold that the issue is waived.